UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
WENDY LINDNER,                                          :
                                                       :
                    Plaintiff,         :          **OPINION & ORDER**
              -against-                 :          01-CV-8245 (DLI)(MDG)
                                                       :
NEW YORK CITY BOARD OF EDUCATION,       :
BRIAN DALTON, STEPHAN CALLARI,          :
individually and in his official capacity,   :
MATTHEW BROMME, individually and in his  :
official capacity, and DINO BIANNCONOTTI, :
individually and in his official capacity,   :
                                                       :
                    Defendants.         :
-----------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff, a teacher formerly employed by the New York City Board of Education ("Board"),

brings this action pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.*, Title IX, 20 U.S.C. § 1681 *et*

*seq.*, 42 U.S.C. § 1983, the New York Human Rights Law, Executive Law § 290, *et seq.*, the New

York City Human Rights Law, the New York City Administrative Code § 8-101, *et seq.*, and state

common law, alleging that she was sexually harassed and physically assaulted by a fellow teacher

at a holiday party, then discriminated against by school administrators, and later retaliated against

for complaining about the incident.[1]  Presently before the court is a motion for summary judgment

by defendants Board, Stephan Callari, Matthew Bromme, and Dino Biannconotti (collectively, the

"Board Defendants"), and defendant Dalton's motion to dismiss all claims pursuant to 28 U.S.C. §

1367(c).  Defendants' motions are granted in part and denied in part, as discussed below.

---

[1]        Plaintiff was permitted to amend the initial complaint to include the fact that she had received a right
to sue letter from the EEOC and to add additional claims under Title VII, Title IX, the New York State Human Rights
Law, and the New York City Administrative Code.

**DISCUSSION**

The relevant facts were adequately summarized by U.S. District Judge I. Leo Glasser in his prior decision in this case (*see Lindner v. City of New York*, 263 F.Supp.2d 585, 589-90) and will be amplified below only to the extent necessary.[2]  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The court must view all facts in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)).  However, the nonmoving party "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks omitted).  Furthermore, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48.

A.    Hostile Work Environment Claim

At the outset, the court concludes that an assault of the nature plaintiff alleges is sufficiently

---

[2]    The court is mindful of the fact that Judge Glasser's prior opinion ruled on defendants' motion to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6).  As a result, all factual allegations in the complaint were taken as true. *Lindner*, 263 F.Supp.2d at 590.  The present motion is one for summary judgment, which requires more than mere pleading of allegations which, if proved, would entitle plaintiff to judgment.  Therefore, in passing on the present motion, the court will endeavor to determine not just what plaintiff has alleged, but what she can prove with credible, admissible evidence.

severe that it may form the basis for a sexual harassment complaint.[3]  A single incident of sexual assault may be enough to support a charge of sexual harassment, *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995), and courts have held that claims of sexual harassment must proceed even on less severe conduct. *See e.g.*, *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (concluding that a reasonable juror could find that a single incident of *verbal* abuse constituted sexual harassment).

Because plaintiff alleges that she was sexually harassed by a co-worker, as opposed to a supervisor, the Board will be liable only for its own negligence. *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998).  Thus, the Board will be liable if it either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it. *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995).  "If the evidence creates an issue as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." *Gallagher v. Delaney*, 139 F.3d 338, 348 (2d Cir. 1998).

The undisputed evidence on record shows that, after being notified of the alleged sexual harassment by defendant Dalton, the Board conducted a prompt and thorough investigation.  During this month-long investigation, which began the day after the alleged incident, defendant Dalton was removed from the school and had no interaction with the plaintiff.  At the conclusion of the investigation, Dalton received a letter of reprimand from defendant Bromme indicating that Dalton's conduct at the party violated Chancellor's Regulation A-830 by "foster[ing] 'unwelcome conduct' upon the [plaintiff]." (January 23, 2001 letter from Superintendent Bromme.)  The letter of

---

[3]     Both Dalton and the Board Defendants artfully avoid the question of whether the assault actually occurred.  For purposes of summary judgment, the court assumes that the assault did occur in accordance with plaintiff's testimony.

reprimand also required that Dalton write a letter of apology to the plaintiff and "<u>strongly</u> suggested that [he] seek counseling for [his] apparent abuse of alcohol." *Id.* (emphasis in original).

While the Board may not be responsible for the assault that occurred at the holiday party, it is responsible for providing a reasonable avenue for complaints and taking adequate remedial measures. The plaintiff testified, and defendants do not dispute, that after the completion of the investigation, Dalton was "posted" at a door that plaintiff must use to enter the building every day. Plaintiff further testified that her attempts to remedy this situation by using another entrance went ignored. From this evidence, among possibly other evidence, a reasonable finder of fact could conclude that the Board's remedial measures were inadequate.[4] As Judge Glasser noted, "a reasonable finder of fact might also conclude that having to work so close to her attacker unreasonably interfered with her work performance." *Lindner*, 263 F.Supp.2d at 594; *see also Richardson v. New York State Dep't of Correctional Service*, 180 F.3d 426, 442 (2d Cir. 1999) (concluding that the district court had improperly granted summary judgment because "reasonable jurors could disagree about whether [the employer's] responses were so 'effectively remedial and prompt' as to shield [the employer] from liability as a matter of law").

Defendants' arguments notably fail to address the fact that plaintiff was forced to work in close proximity to her attacker. Of particular interest is a case the Board Defendants cite, *Devlin v. Teachers Ins. & Annuity Ass'n of America*, 2003 WL 1738969 (S.D.N.Y. 2003), in support of their argument that the Board sufficiently responded to plaintiff's complaint of sexual harassment by Dalton. In *Devlin*, the alleged harrasser, who had never before been accused of sexual harassment,

---

[4] Plaintiff's testimony regarding this issue is worth noting here. When asked if plaintiff was offended by Dalton's saying "Good morning" to her on the way into the school, plaintiff responded: "I am nothing. My job every morning is to get past him. That is a job. It is no longer entering a school. It becomes a physical and emotional job for me." Plaintiff's Deposition at 329.

had his pay cut, was demoted, and, most significantly, was prohibited from entering the floor where plaintiff worked. This contrasts sharply with the present case, where plaintiff was forced to interact with her alleged attacker on a daily basis.

B.    Retaliatory Hostile Work Environment Claim

To make out a prima facie case of retaliation, the plaintiff must show: (1) participation in a protected activity; (2) that the employer was aware of the activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d. Cir. 1988). For purposes of this motion, defendants concede the first two elements of plaintiff's prima facie case.

1.    Adverse Employment Action

Among other things, plaintiff alleges that her transfer from the gifted program to classes of "lower functioning" students was an adverse employment action. Defendants' response is twofold: first, defendants claim that the transfer was merely a "lateral transfer with no demotion in form or substance" and that plaintiff's "personal feelings" about the new assignment are irrelevant; second, defendants contend that plaintiff was transferred because Mary Wagner, a teacher with more seniority than plaintiff, applied to teach the gifted class and the teachers' collective bargaining agreement compelled assignment of the gifted class to Ms. Wagner. This latter argument speaks more to the causal link between the plaintiff's protected activity and the transfer because, defendants argue, the transfer was in fact caused by the demands of the collective bargaining agreement and not retaliatory animus.

Defendants' second argument undercuts the first. The fact that the teachers' union

negotiated for the right for its most senior members to teach the gifted class indicates that the gifted class is preferred to other assignments. Defendants themselves allege that another teacher used her seniority in order to obtain this plum assignment. Based on this evidence, a reasonable juror could conclude that the gifted program is objectively superior to other assignments. It is therefore not merely plaintiff's subjective "personal feelings" or preferences that were offended by the transfer. Rather, a rational juror could conclude that plaintiff was transferred to an objectively inferior assignment. *See Pimentel v. City of New York*, 2002 WL 9775335 at *3-4 (discussing when a transfer may constitute an adverse employment action). Plaintiff has therefore alleged and proffered admissible evidence for at least one adverse employment action.

2. Causation

Defendants claim that two facts sever the causal link between the protected activity and the transfer of programs. First, as noted above, defendants argue that the transfer was actually mandated by the collective bargaining agreement. Second, defendants allege that the four-month lapse in time (from December 2000 to April 2001) between the complaint of sexual harassment and the transfer defeats any potential inference of causation.

Defendants claim that the transfer resulted from a restructuring of several program assignments, which caused the elimination of all but one of the gifted classes. In accordance with the teachers' collective bargaining agreement, a teacher with more seniority than plaintiff was given this assignment. It is for this reason, defendants claim, that plaintiff was removed from her position teaching the gifted class. Plaintiff counters that the program restructuring itself was done with the intent of depriving plaintiff of her preferred position. In order to credit this argument, a finder of fact would have to believe that the defendants were willing to go to significant lengths to punish

6

plaintiff. While the issue is a close one, the court concludes that it presents a material question of fact that the plaintiff is entitled to present to a jury.

Plaintiff's response to the second argument, which defendants do not dispute, is that April 2001 was the first opportunity defendants had to alter plaintiff's program assignment. If, as plaintiff claims, defendants were intent on retaliating against plaintiff by changing her program assignment, then April 2001 was their earliest chance. This explanation for the temporal gap, if credited, leaves the jury with sufficient evidence to infer a causal link between the alteration of plaintiff's program assignment and the complaints of sexual harassment. The jury might also rationally conclude that four months is sufficiently brief an interval between the protected activity and the transfer that an inference of retaliatory motivation is warranted.[5]

Plaintiff's claim for retaliation is sufficient to survive a motion for summary judgment.

C.    Qualified Immunity[6]

Government agents enjoy qualified immunity from liability for civil damages when they perform discretionary functions "if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that [their] acts did not violate these clearly established rights." *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir.1998) (alteration in original) (internal quotation marks omitted). The right to be free

_____

[5]    As with all other rulings made herein, the court's focus on the allegedly retaliatory transfer is only for purposes of resolving the instant motion for summary judgment and should not be interpreted to the exclusion of other potential theories. For example, plaintiff may well be able to prevail on her theory that defendant Callari's statements that plaintiff should "stay in the building" is evidence of discriminatory animus or that it supports the inference that other actions were taken for the purpose of retaliation.

[6]    In the Amended Complaint, plaintiff has alleged that "defendants" committed an assault and battery against her. To the extent that plaintiff alleges that any defendant other than Dalton has committed an assault and battery, that claim is dismissed. Plaintiff has adduced no evidence whatsoever from which a rational juror could conclude that defendants Callari, Bromme, or Biannconotti had any physical contact with her whatsoever.

of a hostile work environment and retaliatory discrimination in the workplace is a clearly established right of which a reasonable person would have known. The defense of qualified immunity therefore hinges on the objective reasonableness of defendants' actions.

The evidence that plaintiff cites, if credited, could lead to liability for the individual defendants. If, as plaintiff argues, the individual defendants conspired to create a hostile work environment by, for example, placing Dalton in close proximity to plaintiff and/or depriving plaintiff of her preferred teaching assignment, they will not be entitled to qualified immunity. The court notes that only certain of plaintiff's theories will pierce the shield of qualified immunity. Qualified immunity may well protect the individual defendants from liability if it is objectively reasonable to believe that their actions did not violate plaintiff's clearly established rights. While plaintiff has not presented an overwhelming case for overcoming qualified immunity, the evidence is nevertheless sufficient to survive summary judgment.

D.    Constructive Discharge

The Board Defendants are entitled to summary judgment on the constructive discharge claim. "[A] claim of constructive discharge must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Stetson v. Nynex Serv. Co.*, 995 F.2d 355, 361 (2d Cir. 1993) (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983)). Because "the 'reasonable person' standard is an objective standard that does not depend on such traditionally triable issues as the subjective reaction of any particular employee to changed working conditions," summary judgment is often more appropriate in the constructive discharge context than it would be where

other types of discrimination are involved. *Halbrook v. Reichhold Chem., Inc.*, 735 F.Supp. 121, 125-26 (S.D.N.Y. 1990). Plaintiff cites seven different examples of conditions and argues that, when taken together, a reasonable juror could view these instances as having created an intolerable working environment sufficient to compel resignation.

Plaintiff first argues that she was threatened with termination. The only evidence in support of this allegation is plaintiff's own testimony that she was told by a "high level school official" that she had to "get out of here," that the principal was "unhappy" that she complained about having been sexually harassed, and that she faced "hostility" that "amounted to a threat of termination or other negative consequences." The "high level school official" was actually Stephen Rudnick, another teacher, with no authority whatsoever to terminate plaintiff or alter her working conditions. The court finds the reference to a "high level school official" disingenuous, to put it kindly. This is not to say that a direct threat from someone with firing authority is always necessary to support a claim of constructive discharge based on the threat of termination. However, in this case, plaintiff has offered no evidence that school officials were using Mr. Rudnick to send plaintiff a message about her future employment prospects at MS 210. In fact, plaintiff's own testimony indicates only that Mr. Rudnick was passing along information regarding the future of plaintiff's job in the gifted program because he had learned about the restructuring of gifted classes. As far as plaintiff's other claims go, the court is hard pressed to imagine a supervisor who would not be "unhappy" that one of his employees had decided to pursue charges of sexual harassment against another.

Plaintiff's claim of "hostility" that "amounted to a threat of termination or other negative consequences" is so general as to be meaningless. Plaintiff's claim that she was "humiliated" is similarly vague. Even if it were sufficiently specific to support a claim of constructive discharge,

there exists not a shred of evidence linking the Board to the humiliation or hostility that plaintiff alleges. That coworkers may have treated plaintiff poorly might be relevant if some evidence existed suggesting that supervisors encouraged, endorsed, or at least permitted this activity. Absent such evidence, plaintiff may not support a constructive discharge claim with conduct from other teachers that cannot reasonably be found to have emanated, in some way, from someone with supervisory authority. Moreover, plaintiff's claims that the working conditions were "intolerable" is severely undercut by the fact that she remained on the job while seeking alternative employment. *Regis v. Metro. Jewish Geriatric Ctr.*, 2000 WL 264336 at *12 (E.D.N.Y.) ("An employee who remains on the job while looking for alternative employment is hard-pressed to establish that her working conditions were intolerable." (citing *Wagner v. Sanders Assocs. Inc.*, 638 F.Supp. 742, 745-46 (C.D.Ca.1996)).

Plaintiff next argues that she was subject to offensive comments "designed to encourage her not to pursue her complaint." In support of this, plaintiff cites only the "get out of here" remark referenced above. This comment is insufficient because (1) it did not come from school officials; and/or (2) it does not even approach the level of offensiveness that would be required to support a claim of constructive discharge. *See e.g., Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir. 1985) (concluding that, even when coupled with other offensive conduct, a supervisor's unnecessary announcement to coworkers that the plaintiff, who was African-American, had been polygraphed with respect to missing money at another branch of the bank was insufficient to support a claim of retaliatory discharge).

Nor does plaintiff's transfer from the gifted program constitute a constructive discharge. It is clear that plaintiff made a decision to leave MS 210 prior to being notified that she was not

teaching the gifted class.[7]  In a document dated May 11, 2001, plaintiff indicated that she would not be returning to the school the following year.[8]  It was not until well after May 11, 2001 that plaintiff was notified of her new teaching assignment.  Plaintiff counters that the document is "self-contradictory" because plaintiff both applies for a position teaching the gifted class the following year and informs the school that she will not be returning.  The salient fact is that the decision to leave MS 210 had already been made.[9]

Plaintiff next argues that she was criticized arbitrarily and baselessly on two specific occasions.  One of these alleged criticisms occurred in June of 2001, after plaintiff had already made the decision to leave MS 210, and is therefore irrelevant.  As to the other, plaintiff admits that she was in violation of a school regulation.  The court recognizes that truth is not always a defense to a claim of constructive discharge based on minor violations of policies or regulations.  This is so because policies and regulations are often ignored, and an employer may not selectively enforce its rules in an effort to force an employee to resign or "paper up" a record for discharge.  In this case, the write-up, while seemingly for a minor violation, had no impact whatsoever on plaintiff other than her allegation that her "respect was taken away" because she had never before been criticized in this way.  While this may be true, it is a far cry from constructive discharge.  Most significantly, unlike the criticisms referenced in *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81 (2d Cir. 1996), this criticism cannot be linked in any credible way to a threat of termination.

---

[7]      Although plaintiff's recollection on the subject was somewhat vague, it is likely that this decision was made before the "get out of here" comment as well.  If so, that comment would also be irrelevant to the constructive discharge analysis.

[8]      The document states that it had to be turned in by plaintiff no later than May 11, 2001.

[9]      The court notes that, also in May 2001, plaintiff requested a "hardship" transfer based on the assault to another school and interviewed for another job.

Lastly, plaintiff claims a psychological or physiological reaction occurred in proximity to the difficult work conditions. Plaintiff cites *Chertkova* in support of this proposition as well. In *Chertkova*, plaintiff had a nervous breakdown, the timing of which "suggest[ed] a connection between plaintiff's work conditions and her decision to leave." 92 F.3d at 90. Plaintiff's psychological or physiological reaction to difficult work conditions (e.g., proximity to Dalton), if any, may support her hostile work environment theory, but it is insufficient to support a theory of constructive discharge.

Whether taken separately or together, plaintiff's allegations are not sufficiently grave to permit a reasonable finder of fact to conclude that plaintiff's working conditions were so intolerable as to compel a reasonable person to resign. As discussed in greater detail in *Stetson v. NYNEX Service Co.,* 995 F.2d 355 (2d Cir.1993), a constructive discharge cannot be proven merely by evidence that an employee disagreed with the employer's criticisms of the quality of his work, or did not receive a raise, or preferred not to continue working for that employer. Nor is the test merely whether the employee's working conditions were difficult or unpleasant. Defendant's motion for summary judgment on the constructive discharge claim is therefore granted.

E.     Negligent Retention

Plaintiff has alleged that the Board was negligent in its retention of Dalton.[10] Whether plaintiff's negligent retention claim survives summary judgment hinges on whether the Board had notice of Dalton's propensity to engage in the complained of behavior. *Brannon v. Tarlov*, 986 F.

---

[10]     The Board Defendants initially argued that Callari, Bianchinotti and Bromme were not negligently retained as well. Defendants' confusion is understandable given that plaintiff's carelessly worded complaint seemingly alleges a claim against the Board for negligent retention of Callari, Bianchinotti and Bromme. In any event, plaintiff now acknowledges that "[p]laintiff's only negligent retention claim is that Defendant Dalton was negligently retained." Plaintiff's Memorandum at 34.

Supp. 146, 150 (E.D.N.Y. 1997) ("An essential element of a negligent retention claim is that the employer knew or should have known of the employee's propensity for the conduct that caused the injury.").

Plaintiff claims notice of Dalton's alleged propensity based on two facts. First, plaintiff alleges that another teacher in the school had been sexually assaulted by Dalton and that news of this assault had circulated widely throughout the school, eventually reaching appropriate supervisors. Second, plaintiff claims that Defendant Biannconotti, the school's vice-principal, while witnessing the attack against plaintiff, said "I can't fucking believe he did this again."

The court is troubled by the fact that both the teacher that was allegedly assaulted and a supposed witness flatly deny that any such incident occurred, that plaintiff was ever informed about it, and that word of this incident circulated throughout MS 210. Nevertheless, such credibility determinations are what trials are for. As to Biannconotti's statement, a reasonable juror could certainly conclude that Biannconotti's use of the word "again" evidences a knowledge by him of Dalton's propensities.[11] Summary judgment is therefore inappropriate here.

F.    Defendant Dalton's Motions

Plaintiff's § 1983 claims against Dalton are dismissed on consent. The court also concludes that no claim against Dalton under the New York State Human Rights Law has been alleged. The Amended Complaint alleges only that "[t]he aforementioned conduct of the *Defendant Board of Education* is without just and reasonable cause and constitutes an unlawful discriminatory practice

---

[11]    The admission of this statement as a basis for establishing that the Board Defendants were on notice of Dalton's propensities is not, as defendants argue, "a twisted attempt to avoid the hearsay problem," but rather a well recognized exception from the very definition of hearsay. *See e.g., Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991) ("[T]he reports cited by plaintiffs would not be hearsay if they were offered for the purpose of proving something other than the truth of the matters stated therein, such as whether appellees had notice.")

relating to employment in violation of New York State Executive Law, Human Rights Law, Section 290 et. seq. and New York City Administrative Code Title 802 et seq." Am. Compl. ¶ 45 (emphasis added). In opposing defendants' motions for summary judgment, plaintiff, for the first time, contends that Dalton has violated the New York State Human Rights Law and that said violation can be gleaned from the Amended Complaint. While there may be cases in which "a complaint that gives notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theories and statutory basis supporting the claim" (Pl.'s Mem. at 35), such circumstances are not presented here. It is one thing to fail to cite a specific statute in a complaint; it is quite another to lull a defendant into a belief that he had not been sued on a particular claim, only to spring that claim on the defendant post-discovery. This is perhaps why the Supreme Court has strictly enforced the long-standing requirement that all complaints place defendants on reasonable notice of the claims against them. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957) (Defendant is entitled to "fair notice" of what the plaintiff's claim is and the grounds upon which it rests.) Plaintiff's purported claim against Dalton under the New York State Human Rights Law is dismissed.

Dalton's remaining arguments are that this court should dismiss the claims pursuant to 28 U.S.C. § 1367(c)(2).[12] This subsection provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." Dismissal on this ground is discretionary.

---

[12]     Defendant also moves to dismiss the claims pursuant to 28 U.S.C. 1367(c)(3), based on the court's having granted summary judgment to defendants on all federal causes of action. However, since plaintiff's Title VII claims have survived, dismissal on this ground is improper.

Unlike *Buckley v. Archdiocese of Rockville Ctr.*, the case upon which Dalton principally relies, "consideration of the merits of the federal claim" in the instant matter will be far more than a mere "tertiary aspect of the proceeding." 992 F.Supp. 586, 591 (E.D.N.Y. 1998). While much of the instant matter does hinge on whether the sexual assault occurred, a great deal of evidence will likely be adduced concerning, among other things: (1) what notice the school had regarding Dalton's propensity to commit the alleged assault; (2) plaintiff's work environment; (3) plaintiff's complaints to appropriate supervisors regarding her work environment; and (4) the Board Defendants' response to those complaints. This evidence has nothing to do with plaintiff's common-law assault and battery claim against Dalton and everything to do with plaintiff's federal discrimination claims. This contrasts sharply with *Buckley*, in which the plaintiff had only one surviving federal claim, against one of the ten defendants, who was only a party by virtue of a very tenuous (and factually suspect) series of inferences.

Accordingly, the court elects to exercise supplemental jurisdiction over plaintiff's state law claims in this matter.

**CONCLUSION**

In accordance with the above, the Board Defendants' motion for summary judgment is denied as to all but the constructive discharge claim, which is hereby dismissed. Plaintiff has failed to articulate a claim against Defendant Dalton under the New York State Human Rights Law. Plaintiff's claim against Dalton under 42 U.S.C. § 1983 is dismissed on consent. Defendant Dalton's motion to dismiss the claims pursuant to 28 U.S.C. § 1367(c) is denied.

SO ORDERED

DATED:      Brooklyn, New York
             July 28, 2005

_____/s/_____
DORA L. IRIZARRY
United States District Judge